JEFFERSON SAVINGS BANK OF JEFFERSON, Appellee, v. JOHN W. IRVING, Appellant.

Banks and banking: ACTION ON OVERDRAFT: DEFENSE. The agreement of a bank to hold the amount of a deposit as a cash item until it was determined to whom the money belonged, to which the depositor was not a party, will not create any lien on the fund in favor of a third party claiming the same, nor deprive the depositor of his right to withdraw it; and such third party can not defend an action on his overdraft on the ground that the bank breached its agreement and paid the depositor out of the fund more than enough to cover the overdraft, though possibly the bank might be liable for breach of contract, in which case the remedy, if any, would be in damages.

*Appeal from Greene District Court.*—HON. Z. A. CHURCH,
Judge.

## FRIDAY, DECEMBER 17, 1909.

ACTION at law upon an overdraft. Defendant denied
generally, and also pleaded that he had not received all
the credits to which he was entitled. A jury was impan-
eled, and at the conclusion of the testimony the trial court
directed a verdict for plaintiff. Defendant appeals.—*Af-
firmed.*

*T. A. Meugan* and *Gallaher & Graham,* for appellant.

*J. A. Henderson,* for appellee.

DEEMER, J.—That defendant was indebted to plaintiff
at the time this suit was commenced upon an overdraft of
something like $200 is conceded; but defendant contends
that one W. S. Irving paid into plaintiff bank a sum more
than sufficient to take up this overdraft, which sum be-
longed to defendant, which was placed to the credit of W.
S. Irving, instead of to defendant, and that defendant
thereupon notified plaintiff that the money belonged to
him. Defendant claims that the bank then and there
agreed to hold this $200 deposit as a "cash item," but that
instead of doing so, after paying defendant's check which
made the overdraft, it paid the amount of the deposit to
W. S. Irving. The trial court directed the verdict upon
the theory that plaintiff had no right to appropriate money
deposited by W. S. Irving, and that it could not be the
arbiter of a dispute between W. S. Irving and this de-
fendant.

Defendant and W. S. Irving are brothers, and W. S.
on or about January 23, 1907, made a deposit in his own
name of $200. On the next day defendant went to the
bank, and claimed that this was his money. As we under-

stand it, defendant offered to show that he then had a communication with the cashier of the bank, wherein it was agreed that the bank should hold this $200 as a cash item until it was determined to whom the money belonged; that, disregarding this promise, plaintiff bank paid the amount of the deposit to W. S. Irving after cashing defendant's check, which caused the overdraft. The trial court would not allow defendant to prove this alleged agreement, and this holding constitutes the only ruling which is complained of, save defendant insists that the verdict should not have been directed. It is manifest that the money deposited by W. S. Irving presumptively belonged to him, and there was no offer to show that it was not his property. Surely defendant could not, by claiming the money, make it his, nor place the money in a position so that plaintiff might apply it on defendant's account. At most, defendant simply offered to show that plaintiff agreed to hold the deposit until he and his brother, or some one else not disclosed, might settle the matter as to who was the rightful owner of the fund. This agreement, even if made, did not create any lien on the funds, nor deprive W. S. Irving of his right to withdraw the deposit. It is not claimed that he was a party to the agreement or that he assented to it in any way, and surely his brother had no control whatever over the fund. It would be strange doctrine to hold that a stranger, simply by insisting that money deposited by another with a bank was his, could authorize a bank to use such deposit to meet an overdraft. Moreover, even if such an agreement as is claimed were made, it gave the bank no right to the fund. If it did not comply with its agreement, it might perhaps be held in damages for its breach of contract, but this would not authorize it to use the money deposited by another. If liable for breach of contract, the remedy would be in damages; that is to say, such direct and proximate damages as resulted from its failure to perform such an agreement.

The case was not bottomed on that theory, however, and no testimony was adduced in support thereof. The trial court did not err in its rulings on testimony or in sustaining the motion to direct. The judgment must therefore be, and it is, *affirmed.*